Robin Craig EODICE, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–87–059–CR.

Court of Appeals of Texas, Austin.

Dec. 23, 1987.

James H. Kreimeyer, Belton, for appellant.

Arthur C. Eads, Dist. Atty., James T. Russell, Administrative Asst., Belton, for appellee.

Before POWERS, BRADY and ABOUSSIE, JJ.

PER CURIAM.

After finding appellant guilty of use of a criminal instrument, the district court assessed punishment at imprisonment for four years and a $500 fine, suspended imposition of sentence, and placed appellant on probation. Tex.Pen.Code Ann. § 16.01 (Supp.1987).[1] The only issue on appeal is the sufficiency of the evidence to sustain the conviction.

Shortly after 2:00 a.m. on August 3, 1986, Killeen police officer Michael Brown observed appellant standing in the doorway of a pawn shop not then open for business. When Brown approached appellant, he saw that appellant was carrying a pair of heavy black leather gloves. Appellant explained to Brown that he used the gloves as driving gloves and that he had been looking in the pawn shop out of curiosity. Inside appellant's car, which was parked nearby, Brown observed several tools and other items, including a feeler gauge, circuit tester, and bent cotter pin.

At this point, Brown frisked appellant and found a military-issue flashlight with a red lens inside one of appellant's socks. Inside the other sock Brown found a pry bar approximately fourteen inches long. Both the flashlight and the pry bar had been covered by the legs of appellant's pants.

Appellant was placed under arrest and transported to the Killeen police station. During the booking process, a card was found in appellant's wallet indicating that he had been certified by the state of California as an "alarm agent." At the time of the alleged offense, however, appellant was a member of the military stationed at Fort Hood. Appellant testified that he served as a helicopter crew chief and that he used the various items found on his person and in his car to repair helicopters.

An examination of the exterior of the pawn shop disclosed no evidence of any attempt to break and enter the building.

■ As described in the indictment, the criminal instruments allegedly possessed by appellant were "a steel pry bar and a bent cotter pin, and a filtered-lens flashlight, and a gap-feeler gauge, and an electric circuit tester." Appellant contends, and this Court agrees, that the evidence does not establish that these items were criminal instruments within the meaning of § 16.01.

1. Section 16.01(a) provides:
A person commits an offense if:
(1) he possess a criminal instrument with intent to use it in the commission of an offense; or
(2) with knowledge of its character and with intent to use or aid or permit another to use in the commission of an offense, he manufactures, adapts, sells, installs, or sets up a criminal instrument.
The indictment in this cause alleges both theories of the offense in separate paragraphs, with burglary alleged as the object offense. The trial court did not indicate whether appellant was found guilty of violating § 16.01(a)(1) or (a)(2).

Section 16.01(b) defines a "criminal instrument" as "anything, the possession, manufacture, or sale of which is not otherwise an offense, that is specially designed, made, or adapted for use in the commission of an offense." In the practice commentary to § 16.01, it is observed:

> Section 16.01 attaches criminal responsibility at a point even earlier than the attempt section (15.01). It aims at terminating incipient criminal activity, the existence of which is indicated by conduct involving a "criminal instrument." The mere possession or manufacture of things specially designed for the purpose of accomplishing a criminal objective is strong evidence of criminal intent. The instrument must be *specially* designed, made, or adapted for the commission of an offense, however; things frequently used in crime, but which have common, lawful uses, are excluded from the purview of Section 16.01 because possession of such things, alone, is conduct too ambiguous for imposition of the criminal sanction. In addition, the section requires proof of specific intent to use the instrument possessed in committing an offense.

Searcy and Patterson, Practice Commentary, 1 Tex.Pen.Code Ann. 542 (1974) (emphasis in original). In the only published opinion discussing the meaning of § 16.01(b), it is stated:

> The statute was obviously designed to deal with a very small class of property which can be used only for the commission of crime and to deal with persons in possession of such property or engaged in the manufacture or adaptation of the property exclusively for use in criminal activities, before the criminal activities are under taken or completed.

*Universal Amusement Co. v. Vance*, 404 F.Supp. 33, 51 (S.D.Tex.1975) [holding that an ordinary motion picture projector used to show a pornographic movie was not a criminal instrument]. *Universal Amusement* was quoted with approval in *Fronatt v. State*, 543 S.W.2d 140 (Tex.Cr.App.1976),

a case involving a challenge to the constitutionality of § 16.01.

By emphasizing the word "specially," the Practice Commentary identifies the key term in § 16.01(b). In order to be a criminal instrument within the meaning of the statute, it is not enough that an object can be used to commit a crime. Rather, the object must be one that, as designed, made, or adapted, is distinctively or peculiarly suited to accomplishing a criminal objective.[2] While the opinion in *Universal Amusement* may have overstated the point by suggesting that the commission of a crime must be the *only* use for a criminal instrument, it is certainly clear from the statutory definition that the commission of a crime must be the object's *primary* purpose.

In *Simmons v. State*, 690 S.W.2d 26 (Tex.App.1985, no pet.), the defendant was arrested at a laundromat in which several coin-operated machines had been burglarized. He had in his possession a homemade coin-operated machine key with adjustable pins so as to make it adaptable to different locks. The arresting officer testified that, based on his experience, the only use of such a key was the commission of burglaries of coin-operated machines. Other witnesses testified that they saw appellant use the key to open the machines in the laundromat. The court of appeals found this evidence sufficient to support the conviction under § 16.01.

In *Carrasco v. State*, 712 S.W.2d 623 (Tex.App.1986, no pet.), a thin wire with a loop on the end was found concealed in the defendant's pants following his arrest for public intoxication. The defendant admitted to the police that he intended to use the wire to break into automobiles. Although the sufficiency of the evidence was not challenged in *Carraso*, the court of appeals found that the wire was specially designed or made for use in the burglary of vehicles.

Turning to the cause before us, there is no evidence that the circuit tester found in

---

**2.** "Special" is an adjective meaning "of a kind different from others; distinctive, peculiar, or unique." Webster's New World Dictionary (2d College Ed. 1980). "Specially" is an adverb meaning "in a special manner, particularly" and "for a special purpose." *Id.*

appellant's car had been specially designed or specially made for use in the commission of burglary, and the State does not argue to the contrary. Although Brown testified that the circuit tester could be used to commit burglary, presumably to disable a burglar alarm, there is no evidence that this particular circuit tester had been specially adapted to that purpose, and again the State does not argue that there was. Because there is no evidence that the circuit tester was specially designed, made, or adapted for use in the commission of burglary, the evidence is insufficient to establish that it was a criminal instrument.

There is also no evidence that the feeler gauge and cotter pin found in appellant's car had been specially designed or specially made for use in the commission of burglary. Although Brown testified that the feeler gauge and cotter pin could be used together to pick a lock, there is no evidence that the feeler gauge had been specially adapted for that use. There is, however, some evidence of such adaptation with respect to the cotter pin: it had been bent into an "L" shape and bore marks of being inserted and twisted in an unusual manner. But while suggestive, we do not find this evidence sufficient to establish beyond a reasonable doubt that the cotter pin had been specially adapted for use in the commission of burglary. We therefore find the evidence insufficient to establish that the feeler gauge and cotter pin were criminal instruments.

The flashlight and pry bar found in appellant's socks are the only items the State expressly contends were proved to be criminal instruments. Although, as with the other items, there is no evidence that the flashlight or pry bar had been specially made or specially designed for the commission of burglary, the State urges that appellant had adapted them to that purpose by hiding them as he approached the pawn shop. We disagree. Appellant's concealment of the flashlight and pry bar in no way altered the nature of these items; they would have been equally adapted to use in the commission of burglary had they been, like the other items, found in plain view inside appellant's car.[3] Appellant's concealment of these objects is evidence of his intent to use them to commit burglary, a separate element of the charged offense, but is not evidence that these items had been specially adapted for that purpose.

The flashlight, pry bar, circuit tester, cotter pin, and feeler gauge possessed by appellant were ordinary, commonly available tools. While the State proved that each of these items could be used to commit burglary, and that appellant intended to use at least some of them for that purpose, the State did not prove that any of these objects had been specially designed, specially made, or specially adapted for use in the commission of burglary. Therefore, the State failed to prove that appellant possessed, manufactured, adapted, sold, installed, or set up a criminal instrument as that term is defined by law.

The judgment of conviction is reversed and reformed to reflect an acquittal.

---

3. "Adapt" is a verb meaning "to make fit or suitable by changing or adjusting." Webster's New World Dictionary (2d College Ed. 1980).