Douglas James Carter v. The State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-191-CR

     DOUGLAS JAMES CARTER,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 
 
From the 13th District Court
Navarro County, Texas
Trial Court # 26,468
                                                                                                                 

O P I N I O N
                                                                                                                 

      Douglas Carter was convicted by a jury of unlawful use of a criminal instrument and
punishment was assessed at two years in prison plus a $10,000 fine. See Tex Pen. Code Ann. §
16.01(a)(2)(Vernon 1994). Carter’s sole point of error complains that the evidence is legally
insufficient to support the verdict. We will affirm the judgment.
FACTS
      On December 10, 1996, Carter approached Troy Miles at a convenience store. Using a fake
accent, he explained to Miles that he needed a ride to the First Baptist Church in Corsicana to
donate money. To support his claim, Carter produced a letter which purported to be written by 
the “High Priest of the most Royal and Imperial Dynasty of Gweto, So. Africa,” advising him to
donate $150,000 in insurance proceeds to “the many poor people suffering in America.” Miles
refused to take Carter to the church, but did agree to take him as far as Wal-Mart. In the Wal-Mart
parking-lot, a man whom Miles recognized from the convenience store approached Miles’ vehicle
pretending to be a stranger. At this time, showing Miles large “bundles” of money, Carter offered
him $300 to drive to the church. Realizing that things seemed “fishy,” Miles insisted that Carter
get out of his car. After some discussion, Carter did exit the car. Concerned that some type of
scam was taking place, Miles called 9-1-1.
           Officer Dustin Munn responded to Miles’ 9-1-1 call. Spotting men who fit the description
given by Miles, Munn checked the registration on their vehicle and determined that it belonged to
Carter. After receiving false information regarding their identities, Munn placed both men under
arrest. Upon searching the vehicle, Munn discovered a bank bag, bank slips, currency
identification bands, and bundles of fake money stacked between real money and bound with
currency identification bands. Suspecting that Carter was attempting to run a “pigeon drop” scam
on Miles, Munn arrested Carter for adapting the bundles of fake money to be used in a criminal
manner.
THE INDICTMENT
      Carter’s indictment alleged, without the formalities:
DOUGLAS JAMES CARTER, hereinafter styled Defendant, on or about the 10th day of
December, A.D. 1996, and before the presentment of this indictment, in the County and State
aforesaid, did then and there, with knowledge of its character and with intent to use and aid
and permit another to use in the commission of an offense, namely, theft, intentionally and
knowingly adapt and set up a criminal instrument, to wit: rolls of “play money” surrounded
or wrapped up by genuine U.S. currency that was specially designed, made, and adapted for
use in the commission of said offense, against the peace and dignity of the State.
 
SUFFICIENCY OF THE EVIDENCE
      In his sole point of error, Carter complains that the evidence is insufficient to support his
conviction. Specifically, he asserts that the State failed to prove that the items in question were
specially designed, made, or adapted for use in the commission of a crime. Further, he asserts that
the items in question have lawful uses, which prohibit their classification as criminal instruments. 
Finally, Carter complains that the most the State proved was possession of the criminal instrument. 
Evidence will sustain a conviction if, viewing it in the light most favorable to the verdict, any
rational trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Lane v. State, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996) (following standard of
Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979)). The
same standard of review applies in both direct and circumstantial evidence cases. Herndon v. State,
787 S.W.2d 408, 409 (Tex. Crim. App.1990).       
      To determine if the evidence is sufficient to sustain Carter’s conviction, we must look to the
language of the statute and consider to whom it is intended to apply. Section 16.01 of the Penal
Code provides that: 
      (a) A person commits an offense if:
(1) he possesses a criminal instrument with intent to use it in the commission of an
offense; or
(2) with knowledge of its character and with intent to use or aid or permit another to use
in the commission of an offense, he manufactures, adapts, sells, installs, or sets up a
criminal instrument. 
(b) For purposes of this section, “criminal instrument” means anything the possession,
manufacture, or sale of which is not otherwise an offense, that is specially designed, made, or
adapted for use in the commission of an offense. 
(c) An offense under Subsection (a)(1) is one category lower than the offense intended. An
offense under Subsection (a)(2) is a state jail felony.
Tex. Pen. Code Ann. § 16.01 (emphasis added). 
      The Court of Criminal Appeals has addressed the intended application of this statute only once.
See Fronatt v. State, 543 S.W.2d 140 (Tex. Crim. App. 1976). In Fronatt v. State, the defendant’s
parole was revoked upon a finding that he possessed a criminal instrument under 16.01(a)(1). In
considering the intended meaning behind the definition of criminal instrument found in 16.01(b),
the Court of Criminal Appeals turned to a federal interpretation of the statute, stating that section
16.01 is aimed at incipient crime. Id. at 142 (citing Universal Amusement Co. v. Vance, 404
F.Supp. 33 (S.D.Tex.1975)). Further, the Court stated, section 16.01 is not only not aimed at an
instrument which has lawful uses, but rather is not aimed at overt criminal actions at all. The Court
clarified that this statute was designed to deal with a very small class of property which can be used
only for the commission of crime and to deal with persons in possession of such property or
engaged in the manufacture or adaptation of the property exclusively for use in criminal activities,
before the criminal activities are undertaken or completed. Id. We believe that the fake money
bound in such a way as to appear to be large sums of real money fits within the purview of 16.01.
      We recognize that the fact that an object can be used to commit a crime does not make it a
criminal instrument. Eodice v. State questioned whether Universal Amusement “overstated the
point” by suggesting that the commission of a crime must be the only use for a criminal instrument,
however stating that “it is certainly clear from the statutory definition that the commission of a
crime must be the object's primary purpose.” Eodice v. State, 742 S.W.2d 844, 846 (Tex.
App.—Austin 1987, no pet.) (emphasis in original). From the evidence offered during Carter’s
trial, it is clear that the commission of a crime was the primary purpose of creating the bundles to
look like money. 
      Carter argues that the bundles of fake and real money cannot fit the definition of a criminal
instrument because they have lawful uses. For example, he asserts, one could give the bundles of
money as a gag gift. However, we believe that Carter is misinterpreting the meaning of “no lawful
uses.” In Eodice, where the defendant’s conviction was reversed because the instruments had
lawful uses, their uses were specifically related to his employment. See id. Similarly, the
defendant’s conviction was reversed in Harris v. State, where testimony revealed that the key which
the State urged to be a criminal instrument was a duplicate of keys used by authorized personnel
to open electric meters. Harris v. State, 790 S.W.2d 778 (Tex. App.—Houston [14th Dist.] 1990,
pet. ref’d). Testimony revealed that the key had legitimate uses, specifically that an electrician
could use the key in emergencies. Further, testimony revealed that Harris refused to sell the key
to anyone other than an electrician. Upon finding that the key had not been changed in any way
from its legitimate form, the court held that the State failed to prove that the key was "specially
designed, made, or adapted" only, or even primarily, for use in the commission of a crime. Id.
at 780. 
      Unlike the key in Harris, the bundles of money possessed by Carter were necessarily made or
adapted for some purpose. The evidence establishes that the purpose for which these bundles were
created involved a scam. Carter showed the fake money bundles to Miles when he offered to pay
$300 for a ride. These bundles of money were adapted to look real to deceive others into
exchanging something of value for what appeared to be a large sum of legitimate bills. We find
the evidence sufficient to show Carter’s intent to use the money bundles in the commission of a
crime. Just because Carter can suggest other uses for the bundles of cash on appeal does not make
them legitimate legal uses which would take them out of the purview of 16.01. 
      Finally, Carter urges that there is no evidence that he adapted the bundles of money. The most
proved by the State, he argues, is possession. Although there is no direct evidence showing Carter
made or adapted bundles of money, considering all of the evidence pointing to the fact that Carter
was attempting to “scam” Miles, we believe a rational jury could reasonably infer that to be the
case. See Alvarez v. State, 813 S.W.2d 222, 224 (Tex. App.—Houston [14th Dist.] 1991, pet.
ref'd). 
      In summary, we believe that a rational jury could have believed from the evidence that Carter
fabricated the bundles with the intent to use them to defraud Miles or some other person. Thus,
the evidence is legally sufficient to support the jury’s finding of guilt. Point one is overruled. The
judgment is affirmed. 
                                                            BILL VANCE
                                                             Justice
 
Before Chief Justice Davis,
           Justice Cummings, and
           Justice Vance
Affirmed
Opinion delivered and filed December 23, 1997
Do Not Publish