Atif JANJUA, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–97–00014–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 22, 1999.

Alex G. Azzo, Houston, for appellant.

Joni M. Vollman, Houston, for appellee.

Panel consists of Chief Justice MURPHY and Justices HUDSON and DRAUGHN.*

## OPINION

J. HARVEY HUDSON, Justice.

Appellant, Atif Janjua, was convicted of promoting child pornography upon his plea of guilty. *See* TEX. PENAL CODE § 43.26.[1] After appellant's conviction, the State moved to forfeit and destroy certain criminal instruments and obscene devices that had been seized from appellant, namely, a Packard Bell central processing unit, a Gold Star color monitor, a Packard Bell keyboard, two video cassette tapes, twenty 3½ inch diskettes, and two 5¼ inch diskettes. In four points of error, appellant

challenges the sufficiency of the evidence to support the court's order. We affirm.

The Code of Criminal Procedure provides authority to forfeit certain items used in the commission of an offense involving a criminal instrument. *See* TEX. CODE CRIM. PROC. ANN. art. 18.18(a) (Vernon Supp.1999). In his first point of error, appellant contends the trial court erred in granting the State's motion because there is no evidence he was convicted of an offense involving a criminal instrument. The forfeiture, however, was not predicated solely upon the theory that the items seized from appellant are criminal instruments. Article 18.18(a) of the Code of Criminal Procedure states, in pertinent part:

> Following the final conviction of a person ... for an offense involving a criminal instrument ... [or] *an offense involving an obscene device or material,* the court entering the judgment of conviction shall order that the ... instrument, obscene device or material be destroyed or forfeited to the state.

TEX.CODE CRIM. PROC. ANN. art. 18.18(a)(Vernon Supp.1999) (emphasis added). Moreover, the State's motion for forfeiture is styled "In the Matter of the Seizure of Certain Criminal Instruments *and Obscene Devices and Materials*"; the introductory paragraph requests the forfeiture of certain "criminal instruments *and obscene devices and materials*"; and it ultimately concludes with a prayer for forfeiture of "criminal instruments *and obscene devices.*" (emphasis added). Accordingly, we find the State's motion was predicated upon the theory that appellant's conviction for promotion of child pornography was an offense which involved (1) a criminal instrument, (2) an obscene device,

---

* Senior Justice Joe L. Draughn sitting by assignment.

1. *See* Act of May 29, 1993, 73 rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3685, *amended by* Act of April 21, 1995, 74 th Leg.,

R.S., ch. 76, § 14.51, 1995 Tex. Gen. Laws 458, 840 (amended 1997)(current version at TEX. PENAL CODE ANN. § 43.26 (Vernon 1994 & Supp.1999)).

or (3) obscene material.[2] Thus, if there is sufficient evidence to support any of the theories alleged in the motion we must affirm the trial court's order.[3]

### Criminal Instrument

For purposes of Article 18.18, the term "criminal instrument" has the same meaning defined in the Penal Code. *See* TEX. CODE CRIM. PROC. ANN. art. 18.18(g)(1) (Vernon Supp.1999). Within the Penal Code, however, the term "criminal instrument" is used only in connection with Section 16.01, a preparatory offense derived from an earlier statute that made it unlawful to be in possession of burglary tools. As codified in the 1925 Penal Code, Article 1402b prohibited any felon from having in his possession . . .

> any engine, machine, jimmy, tool, false key, pick-lock, bit, nippers, steel wedges, drill, tappins, or other implements or things adapted, designed or commonly used for the commission of burglary or safecracking, under circumstances evincing an intent to use or employ, or allow the same to be used or employed, in the commission of burglary or safecracking,

or knowing that the same are intended to be so used.

Although the statute speaks in terms of instruments that are "designed" or "adapted" for use in committing a burglary, the list of implements expressly includes drills, bits, wedges, nippers,[4] and other ordinary tools. Possession of these instruments was an offense, however, *only* if the defendant's possession was under circumstances evincing an intent to use or employ the tools in the commission of a burglary. Thus, the gravamen of the offense was not the possession of these devices, but their *intended* use.

The offense was preparatory in nature and differed only slightly from attempted burglary. In an attempted burglary, the actor's intent was established by evidence that he had made some attempt beyond mere preparation to commit the crime, but had failed.[5] Under Article 1402b, the actor's intent was established by (1) possession of tools commonly used to commit burglary (2) under circumstances indicating that he was about to use them for that purpose.

---

**2.** In a judicial confession admitted at his plea hearing, appellant stipulated that "on or about November 1, 1995, [he] did then and there unlawfully, intentionally and knowingly promote *material containing a film image*, namely, reproduction of a photograph that visually depicts a child younger than eighteen years of age, at the time the film image was made, who is engaging in sexual conduct, to wit, deviate sexual intercourse, and [he] knew the *material containing the film image* depicted the child engaging in the conduct of deviate sexual intercourse." (emphasis added).

**3.** Although "obscene materials" are omitted from the prayer, the opening paragraph of the State's motion specifically seeks the forfeiture of criminal instruments, obscene devices, and obscene materials. Moreover, the State introduced evidence that some of the property seized constituted obscene material or at least "contained" obscene material. In fact, in an alternative form of relief, appellant seeks the return of the seized items after the "obscene material" has been removed.

A statutory proceeding for the forfeiture of personal property is one in rem and civil in nature. *State v. Rumfolo*, 545 S.W.2d 752,

754 (Tex.1976). Thus, we must apply the rules of civil procedure. *Fleming v. State*, 704 S.W.2d 530, 531 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.). In the absence of special exceptions, we construe the pleadings liberally in favor of the pleader. *See Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982). The measure of relief granted in the judgment is determined by allegations of fact contained in the pleadings and proven at trial, not merely the matters prayed for. *See Robinwood Bldg. and Dev. Co. v. Pettigrew*, 737 S.W.2d 110, 112 (Tex.App.-Tyler 1987, no writ), citing *Milliken v. Smoot*, 64 Tex. 171, 173 (1885). Accordingly, we find the issue of whether some or all of the property constituted "obscene material" was raised both by the State's pleadings and the evidence adduced before the trial court.

**4.** "A tool, as pincers or pliers, used for grasping or nipping." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 796 (1984).

**5.** *See* Article 1402 of the 1925 Penal Code.

In 1973, the Legislature adopted a new penal code, and possession of burglary tools became "unlawful use of a criminal instrument." [6] Like its predecessor, the new statute was anticipatory in nature and was aimed at criminalizing conduct occurring immediately prior to the commission of a more serious offense. It was appropriately placed under Title 4 of the new code, entitled "Inchoate Offenses." No longer limited to burglary and safecracking, the new statute provided that a person could commit an offense if he possessed a criminal instrument with intent to use it in the commission of *any offense. See* TEX. PEN.CODE ANN. § 16.01 (Vernon 1994). Where Article 1402b had listed a variety of ordinary tools "adapted, designed or commonly used for the commission of burglary or safecracking," the new statute defined "criminal instrument" as "anything that is specially designed, made, or adapted for the commission of an offense." [7] Thus, it appears to have been the legislative intent to expand the scope of the former statute.

However, the first court to examine the new statute construed it so narrowly as to extinguish its practical application. In *Universal Amusement Co. v. Vance*, 404 F.Supp. 33 (S.D.Tex.1975), *vacated,* 425 U.S. 262, 96 S.Ct. 1527, 47 L.Ed.2d 774 (1976), an undercover vice-officer purchased a ticket to an adult theater. After viewing a sexually explicit film, the officer concluded it was obscene. At that time, the penalty for commercial obscenity was a Class B misdemeanor.[8] Seeking a more potent offense, the police seized the film projector as a "criminal instrument" and charged the operator with unlawful use of a criminal instrument which was then a third degree felony.[9] To prevent a misuse of the statute, the court reduced its scope by holding:

The words of subpart (b) of the statute clearly indicate that a criminal instrument is not equipment which is designed, made, or adapted for a lawful use, but which incidentally may be used for the commission of a crime. There are many, many common, ordinary, everyday objects which can be used to commit crimes, but these are not criminal instruments.

*Universal Amusement*, 404 F.Supp. at 38–39.

The following year, the Court of Criminal Appeals cited *Universal Amusement* with approval and concluded the "statute was designed to deal with a very small class of property which can be used *only* for the commission of crime." *Fronatt v. State*, 543 S.W.2d 140, 142 (Tex.Crim.App. 1976) (quoting *Universal Amusement*, 404 F.Supp. at 49) (Emphasis added). However, it is difficult to imagine an instrument that has no conceivable purpose apart from the commission of crime. Even the criminal instrument found in *Fronatt, i.e.,* a lock pick, is a legitimate tool in the hands of a locksmith. Thus, for the most part, the only objects that have no lawful use are those whose mere possession constitutes a criminal offense such as silencers, "crack" pipes, and child pornography. *See* TEX. PEN.CODE ANN. § 46.05 (Vernon 1994); TEX. HEALTH & SAFETY CODE ANN. § 481.125 (Vernon Supp.1999); TEX. PEN.CODE ANN. § 43.26 (Vernon Supp.1999). But in 1975, the Legislature amended Section 16.01 and redefined the definition of "criminal instrument" to mean "anything, the possession, manufacture, or sale of *which is not otherwise an offense,* that is specially designed, made, or adapted for use in the commission of an offense." *See* Act of June 2,

---

6. *See* Act of May 24, 1973, 63 rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883.

7. Act of May 24, 1973, 63 rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 912.

8. Act of May 24, 1973, 63 rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 960.

9. *See* Act of May 24, 1973, 63 rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 912. The statute was later amended to provide a penalty one category lower than the offense intended. *See* Act of June 2, 1975, 64 th Leg., R.S., ch.342, § 7, 1975 Tex. Gen. Laws 912, 913.

1975, 64th Leg., R.S., ch.342, § 7, 1975 Tex. Gen. Laws 912, 913.

■ By eliminating contraband from the scope of items that may be classified as criminal instruments, the Legislature significantly clarified its intention. It is almost impossible to conceive of an object which may be lawfully possessed, but has no legitimate use. Presuming the Legislature did not intend a useless act, we find the term "criminal instrument," as defined in Section 16.01, is not restricted to objects that can be used *only* for criminal purposes. Although *Fronatt* contains contrary language, that decision is not controlling because the Court of Criminal Appeals was interpreting the pre-amendment definition of the term.[10] Moreover, the Court of Criminal Appeals has had no further occasion to construe the term since the 1975 amendment.

■ Assuming the term "criminal instrument" is not restricted to objects that can be used *only* for criminal purposes, the issue we must now decide is to what extent must the instrument be "specially designed, made, or adapted for use in the commission of an offense." TEX. PEN.CODE ANN. § 16.01 (Vernon 1994). The Austin Court of Appeals focused on the word "specially" and concluded that while the commission of an offense need not be the object's only use, it must be its *primary* purpose. *See Eodice v. State*, 742 S.W.2d 844, 846 (Tex.App.-Austin 1987, no pet.). In that case, a police officer spotted a person standing in the doorway of a pawn shop at 2:00 a.m. The pawn shop was not then open for business, and as the officer approached, he noticed the suspect was carrying a pair of heavy black leather gloves. The man told the officer that he had been looking in the pawn shop out of curiosity and that he used the gloves for driving. When the officer looked inside the suspect's car, he saw an assortment of tools, including a feeler gauge, a circuit tester, and a bent cotter pin. The officer then frisked the suspect and discovered he was carrying a military-style flashlight equipped with a red filter inside one of his socks. Tucked inside the sock on his other ankle, the officer found a 14-inch pry bar. A California "alarm agent" certificate was found in his wallet.

Evidence was presented that the circuit tester could be used to disable a burglar alarm. Additional evidence established that the feeler gauge could be used in combination with a cotter pin to serve as a lock pick. Moreover, the cotter pin had been bent into an "L" shape and bore marks of being inserted and twisted in an unusual manner. Nevertheless, because the implements in the defendant's possession were not the kind of items whose *primary* purpose was the commission of an offense, the court reversed the conviction and acquitted the defendant.

■ In our opinion, the holding disregards the preparatory nature of an inchoate offense. Section 16.01 is not designed to punish a defendant for possessing quasi-criminal contraband, *but to penalize him for incipient criminal conduct*. Cicero observed that "crime and the intention of crime are equal in nature."[11] The justification for inchoate criminal liability rests upon the assumption that forming an intention to engage in future criminal conduct is a sufficiently culpable act to war-

10. This Court recited *Fronatt's* narrow interpretation of "criminal instrument" in *Harris v. State*, 790 S.W.2d 778 (Tex.App.-Houston [14th Dist.] 1990, pet. ref'd). However, in *Harris*, the State failed to show the defendant's sale of electric service meter lockband keys to licensed electricians was accompanied by any intent that they should be used unlawfully. Because the keys had a legitimate use in the hands of a licensed electrician, and the State failed to show the defendant had any intent that they should be used otherwise, the State's evidence was insufficient under any definition of criminal instrument, whether broad or narrow.

11. DAVID SHRAGER AND ELIZABETH FROST, THE QUOTABLE LAWYER 67 (1986).

rant the imposition of criminal penalties.[12] The evidence elicited in *Eodice* established beyond any reasonable doubt that the defendant had formed the intent to unlawfully enter the pawn shop. Proof of that intent was shown by the suspicious circumstances under which he was found *and his possession of tools and implements specially suited to effect such an entry.* We believe the facts in *Eudice* are precisely the type of scenario envisioned by the Legislature when it adopted Section 16.01.

■ The distinction between what does or does not constitute a criminal instrument under Section 16.01 is a synthesis of the peculiar design or adaptation of the device and the context of its use or possession because both bear on the element of intent. Where the device is simple and seemingly innocuous, there must be other compelling evidence to show the actor intended to use it in the commission of an offense. For example, where a suspect is found in possession of a piece of wire with a loop at one end, the object's design does not readily manifest the suspect's criminal intent because everyone has fashioned just such a device for innocently retrieving small objects from narrow places. But where the suspect freely admits to police that he intended to use the wire to unlawfully enter locked automobiles, it is a criminal instrument. See *Carrasco v. State,* 712 S.W.2d 623, 625 (Tex.App.-Corpus Christi 1986, no pet.).

■ With more intricate devices, the design of the device itself can provide the primary evidence of the defendant's nefarious intent. For example, where a defendant is found inside a public laundromat with a bag of coins and a complicated homemade device constructed of pins and rubber bands capable of opening laundromat coin boxes, the device itself provides strong evidence of the actor's criminal intent. See *Simmons v. State,* 690 S.W.2d 26, 28–29 (Tex.App.-Beaumont 1985, no pet.).

However, whether a device is simple or complex, the gravamen of the crime remains the actor's *intended use* of the instrument. By definition, mere possession of the instrument is not an offense. Thus, the State must show by other facts and circumstances that the actor intended to use the device in the commission of an offense. Here, the State's evidence showed appellant was first suspected of promoting child pornography when a father discovered certain images and electronic correspondence on his 15–year–old son's computer that had been transmitted via the Internet. One of the messages contained a telephone number, a telephone pager number, and the initials "A. J." Police traced the telephone and pager numbers to appellant. After ascertaining appellant's address, police obtained a search warrant to seize his computer. An inspection of appellant's computer revealed that it contained the same images and correspondence which had been transmitted to the complainant's son.

---

12. Larry Alexander & Kimberly D. Kessler, *Criminal Law: Mens Rea and Inchoate Crimes,* 87 J.Crim. L. & Criminology 1138, 1170 (1997).

This assumption in turn rests on two further assumptions.

First, the assumption presumes that forming an intention alters the world in some way that is material to the criminal law's concerns. That assumption is surely met, at least under many standard philosophical accounts of intentions. Under those accounts, intentions alter the balance of reasons for the actor. Before he forms the intention, he has reasons A, B, and C in support of doing the act and reasons X, Y, and Z against doing it. After he forms the intention, he has a new reason for doing the act, namely, the intention itself, a reason that makes the act more likely.

Second, the assumption presumes not only that forming intentions changes the world in the way indicated, but that forming intentions is something we do intentionally. If this assumption is granted, then we can say that forming a culpable intention— an intention to commit a future culpable act—is itself a culpable act. *Id.*

Central to appellant's scheme of selling and promoting child pornography was his personal computer, and the State claims it was specifically "adapted" for a criminal purpose in several ways. First, the computer had been modified with the addition of a video capture card. This device permitted appellant to convert a "moving" video image into a series of "still" photographs. Second, numerous files had been created on the hard drive to organize and store pornographic images.

The size of the hard drive was one gigabyte or 1000 megabytes. Approximately 655 megabytes of information was stored on the hard drive. Over 387 megabytes were used by program files such as the operating system, word processor, web browser, desktop publishing program, photo enhancement programs, etc. Of the remaining data files, 212 megabytes were image files. An inspection of the these files revealed that 95 per cent were sexually oriented images, and approximately 40 per cent of those images depicted children engaged in sexual acts and various states of sexual arousal. The hard drive also contained an Internet advertisement offering diskettes containing images of sexual acts for $10. The advertisement indicated that photos of "teens of all ages" were also available.

Based upon the file structure, the contents of the hard drive, and equipment specially added to the computer, the State's expert testified that in his opinion the primary purpose of the instrument was "to view, create, and distribute image files, primarily pornographic image files." Appellant contends the computer and its accessories do not constitute a criminal instrument because it has legitimate uses. Moreover, appellant argues that while peripheral cards, devices, and software installed on the computer may have facilitated the promotion of child pornography, these items have legitimate uses and may be lawfully purchased in most computer stores. Appellant further claims the mere fact that much of the data stored on his hard drive was obscene has no bearing on whether his computer is a criminal instrument. Data is routinely stored and deleted on most computers. Because the obscene files could be easily purged from the hard drive and other storage media, appellant suggests his computer was not "adapted" or "modified" for a criminal purpose.

 No device, sitting passively on the shelf, is a criminal instrument. Thus, the ontological essence of what constitutes a criminal instrument under Section 16.01 must be determined by both (1) its design or adaptation and (2) the facts and circumstances establishing its intended use. Here, we need not speculate about appellant's *intended* use of the computer because the evidence shows, and was confirmed by his plea of guilty, that he *did* use the computer to distribute child pornography. Moreover, the evidence shows the computer was *specially* adapted to facilitate the commission of this offense.[13] Accordingly, we hold appellant's computer and its immediate accessories are criminal

---

13. The phrase "specially designed, made, or adapted" is also used in TEX. PEN.CODE ANN. § 46.01 (Vernon 1994) when defining a "club." Some instruments are clearly designed and made to inflict serious bodily injury or death, *i.e.*, a blackjack, nightstick, mace, or tomahawk. *Id.* Other items, like the leg of a bar stool, can be *adapted by actual use* to inflict serious bodily injury or death. In such case, the instrument is a club. *See Jackson v. State*, 865 S.W.2d 259, 261 (Tex.App.-Eastland 1993, no pet.).

As that phrase is incorporated by reference within Article 18.18, we take the term "spe-

cially" designed, made, or adapted to mean the object must be a fundamental or critically important element in the commission of the intended offense. Here, for example, the State would not be authorized to forfeit the desk on which appellant's computer sat, the house in which it resided, or the automobile that transported appellant to and from the house. These items were, in a remote sense, *used* in the commission of the offense, but only appellant's computer was *specially* designed, made, or adapted for distributing child pornography.

instruments under the record presented here.

### Obscene Device

■ An "obscene device" is a device, "including a dildo or artificial vagina, designed or marketed as useful primarily for the stimulation of human genital organs." *See* TEX. PEN.CODE ANN. § 43.21(a)(7) (Vernon 1994). Appellant's computer does not fit the definition of an obscene device.

### Obscene Material

■ Appellant does not contest the fact that he stored obscene material, namely, child pornography on his computer. He contends, however, that there is a distinction between his computer and the obscene material electronically encoded therein.

In the context of obscene material, "material" means "anything tangible that is capable of being used or adapted to arouse interest, whether through the medium of reading, observation, sound, or in any other manner, but does not include an actual three dimensional obscene device." TEX. PEN.CODE ANN. § 43.21(a)(2) (Vernon 1994). In ordinary usage, "tangible" means something "capable of being touched." WEB-STER'S THIRD NEW INTERNATIONAL DICTIONARY 2337 (1993).[14] Computers and floppy disks are tangible; magnetic coding is not. Because appellant suggests the trial court should have ordered the return of his computer after "erasing" the obscene material, we must decide whether the forfeited items constitute obscene material or are merely the storage medium for such material.

■ In 1997, the Legislature expressly addressed the topic of "cyber-porn" when it defined "visual material" as:

(A) any film, photograph, videotape, negative, or slide or any photographic reproduction that contains or incorporates in any manner any film, photograph, videotape, negative, or slide; or

(B) *any disk, diskette, or other physical medium that allows an image to be displayed on a computer or other video screen and any image transmitted to a computer or other video screen by telephone line, cable, satellite transmission, or other method.*

TEX. PEN.CODE ANN. § 43.26(b)(3) (Vernon Supp.1999) (Emphasis added). Thus, we believe the Legislature intended "obscene material" to include the tangible medium on which the obscene electronic coding is stored and displayed.

Accordingly, we find that because the forfeited items were both criminal instruments and obscene material, the trial court did not err in granting the State's request for forfeiture. Appellant's first, second, third, and fourth points of error are overruled, and the order of forfeiture is affirmed.

---

**14.** *See also* BLACK'S LAW DICTIONARY 1456 (6 th ed. 1990) ("Having or possessing physical form. Capable of being touched and seen; perceptible to the touch; tactile; palpable; capable of being possessed or realized; readily apprehensible by the mind; real; substantial."). *Also Vincent v. West Texas State University*, 895 S.W.2d 469, 472 (Tex. App.-Amarillo 1995, no writ.) ("only those items having a 'corporeal, concrete, and palpable existence' are considered tangible").