Milton Wayne HARDY and Lovell Green Hardy, Individually and Doing Business as Game Time Amusements, Appellants,

v.

The STATE of Texas, Appellee.

No. 10–99–336–CV.

Court of Appeals of Texas, Waco.

June 27, 2001.

Michael P. Gibson, Burleson, Pate & Gibson, L.L.P., Dallas, for appellant.

Bill Moore, County Attorney, William F. Lewis, Jr., Stuart Madison, Assistant County Attorneys, Cleburne, for appellee.

Before Chief Justice DAVIS, Justice VANCE and Justice GRAY.

## OPINION

DAVIS, Chief Justice.

The State sought to forfeit twenty "eight-liner" machines, four slot machines, and other evidence seized in the course of a gambling investigation. After a show-cause hearing, the court found that the seized evidence constitutes gambling devices, gambling paraphernalia, or gambling proceeds and ordered that this evidence be forfeited to the State. Milton Wayne Hardy and Lovell Green Hardy, individually and doing business as Game Time Amusements, (collectively, the "Hardys") claim in six issues that the evidence is legally and factually insufficient to support the court's determination that the eight-liners and slot machines constitute gambling devices and gambling paraphernalia.

### BACKGROUND

Officers from the Department of Public Safety, the Office of the Attorney General, and the Office of the County Attorney of Johnson County executed a search warrant at Game Time Amusements ("Game Time") during the course of a gambling investigation. The officers seized twenty devices commonly known as "eight-liners," four slot machines, $2,340.25 in United

States currency, seventy-two $5.00 gift certificates for Wal–Mart/Sam's °Club, $130.00 in personal checks, and other miscellaneous items.

■ The State filed a petition seeking forfeiture of the seized items.[1] On the same date, the trial court issued a notice under article 18.18(b) of the Code of Criminal Procedure advising the Hardys that they must appear and show cause why the seized property should not be destroyed or forfeited.[2] *See* TEX.CODE CRIM.PROC.ANN. art. 18.18(b) (Vernon Supp.2001).

Lovell Hardy testified that the eight-liners and slot machines are electronic devices which operate at least partially by chance. When a player inserted money in one of these devices, the machine would record the number of credits. For each play, the machine recorded the "bets" made and reduced the available credits accordingly. For each win, the device recorded the number of points won. When a player finished at a particular machine, he would summon the attendant to "verify" his points. The attendant then depressed a button which caused the device to dispense tickets in an amount corresponding to the number of points and which deleted that person's recorded point total so another could play. The "penny machines" dispensed one ticket for every 100 points accumulated. The "nickel machines" dispensed one ticket for every 500 points accumulated.

Hardy testified that the 100–point tickets were worth $1.00 and the 500–point tickets were worth $5.00. A player could exchange tickets for a $5.00 gift certificate to Wal–Mart/Sam's Club or for play on another machine. To exchange tickets for re-play on another machine, a player presented his tickets to the attendant who placed the money in the device of the player's choice.

At the conclusion of the hearing, the court found that the seized eight-liners and slot machines are gambling devices and gambling paraphernalia and ordered their forfeiture together with other currency, gift certificates, and miscellaneous items which the court found to be gambling paraphernalia or proceeds.

At the Hardys' request, the court filed findings of fact and conclusions of law. The court made the following findings which are pertinent to this appeal:

g. That a player of the machines could obtain a Wal–Mart/Sam's Club gift certificate as a result of the play of the machines and that 72 such gift certificates were seized at Game Time Amusements on March 10, 1999;

i. That the 72 Wal–Mart/Sam's Club gift certificates, each valued at $5.00 for a total value of $360.00, seized on March 10, 1999 are "things of value" and that

---

1. Actually, the Hardys instituted this proceeding by filing a "Notice of Interested Party to Show Cause Why Property Should Not Be Forfeited." When the State decides not to prosecute after the seizure of suspected contraband under a search warrant, the magistrate to whom the warrant is made returnable must send written notice to the person found in possession of the contraband to show cause why the contraband should not be destroyed or forfeited. *See* TEX.CODE CRIM.PROC.ANN. art. 18.18(b) (Vernon Supp.2001). The Hardys were seeking such a hearing by their show-cause notice. Nevertheless, the court elected to proceed under the State's forfeiture petition which was docketed under the same cause number as the Hardys' show-cause notice. It would seem that a show-cause hearing under article 18.18(b) could be initiated at the instance of the court, the property owner, the State or the law enforcement agency which seized the contraband. *Id.* art. 18.18(e) (Vernon Supp.2001).

2. Unless otherwise indicated hereinafter, the term "article" refers to an article of the Code of Criminal Procedure.

the sixteen (16) Wal–Mart/Sam's Club gift certificates, each valued at $5.00 for a total of $80.00, and awarded to Department of Public Safety undercover officers through playing the machines at Game Time Amusements during the course of the investigation are "things of value"; and

n. That the machines as identified in the State's Motion For Forfeiture of Gambling Proceeds, Devices, Equipment and Paraphernalia, do not qualify under the "gambling device" exclusion set out in section 47.01(4)(B) of the Texas Penal Code.

The court stated in Conclusion of Law "a" that the twenty-four seized machines constitute "gambling devices and gambling paraphernalia."

## BURDEN OF PROOF

■ We begin with the settled proposition that forfeiture proceedings under chapter 18 of the Code of Criminal Procedure are *in rem* proceedings which are civil in nature. *See State v. Rumfolo*, 545 S.W.2d 752, 754 (Tex.1976); *Janjua v. State*, 991 S.W.2d 419, 422 n. 3 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *see also United States v. Ursery*, 518 U.S. 267, 288–89, 116 S.Ct. 2135, 2147–48, 135 L.Ed.2d 549 (1996). As such, they are governed by the rules applicable to civil trials and appeals generally. *See Janjua*, 991 S.W.2d at 422 n. 3; *Fleming v. State*, 704 S.W.2d 530, 531 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Brown v. Barlow*, 685 S.W.2d 406, 408 (Tex.App.—San Antonio 1985, orig. proceeding) (per curiam).

■ The appropriate standard of review in a civil appeal in which the sufficiency of the evidence is questioned depends on which party had the burden of proof at trial. *See, e.g., Checker Bag Co. v. Washington*, 27 S.W.3d 625, 633 (Tex.App.—Waco 2000, pet. denied); *Crow v. Burnett*, 951 S.W.2d 894, 897 (Tex.App.—Waco 1997, pet. denied). Thus, we must first determine who has the burden of proof in a show-cause hearing under article 18.18(f). *See* TEX.CODE CRIM.PROC.ANN. art. 18.18(f) (Vernon Supp.2001).

Article 59.05(b), which governs a hearing commenced by the State to forfeit contraband used in the commission of first and second degree felonies, drug offenses, and other listed crimes, squarely places the burden on the State to prove its entitlement to forfeiture by a preponderance of evidence.[3] *See* TEX.CODE CRIM.PROC.ANN. art. 59.05(b) (Vernon Supp.2001). Article 18.18(f), however, allocates the burden of proof in a different manner.[4] *Id.* art. 18.18(f). The statute provides:

**3.** Article 59.01(2) provides a complete listing of the offenses for which a forfeiture of contraband may be sought under chapter 59 of the Code of Criminal Procedure. *See* TEX. CODE CRIM.PROC.ANN. art. 59.01(2) (Vernon Supp.2001).

**4.** Other forfeiture statutes are silent on the burden of proof. Sections 481.152 and 481.153 of the Health & Safety Code authorize a court to forfeit a "controlled substance plant" or "controlled substance property" under section 481.159 of that Code. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.152(d), 481.153(b) (Vernon 1992). Although section 481.159(a) does reference a court's forfeiture of such contraband "under this code," section 481.159 is silent on the procedure to follow to obtain such a forfeiture or the burdens applicable to such a proceeding. *Id.* § 481.159 (Vernon 1992). Nevertheless, section 481.184(a) provides that, in a proceeding under chapter 481, "[a] person claiming the benefit of an exemption or exception [which excuses his possession of the prohibited substance] has the burden of going forward with the evidence with respect to the exception or exemption." *Id.* § 481.184(a) (Vernon 1992).

Sections 481.152 and 481.153 also authorize a "summary forfeiture" of such contraband. *Id.* §§ 481.152(c), (d), 481.153(a) (Vernon 1992). The Health & Safety Code

(f) If a person timely appears to show cause why the property or proceeds should not be destroyed or forfeited, the magistrate shall conduct a hearing on the issue and determine the nature of property or proceeds and the person's interest therein. Unless the person proves by a preponderance of the evidence that the property or proceeds is not gambling equipment, altered gambling equipment, gambling paraphernalia, gambling device, gambling proceeds, prohibited weapon, criminal instrument, or dog-fighting equipment and that he is entitled to possession, the magistrate shall dispose of the property or proceeds in accordance with Paragraph (a) of this article.

*Id.*

This statute plainly requires a property owner to prove by a preponderance of evidence that the seized property is not contraband subject to forfeiture. Nevertheless, the parties cite the 1976 Supreme Court decision in *Rumfolo* as authority for the proposition that the burden actually rests with the State to prove its entitlement to forfeiture by a preponderance of evidence.[5] *See Rumfolo*, 545 S.W.2d at 754. In our view, *Rumfolo* does not support this proposition.

In *Rumfolo*, the lower court held that article 18.18, subsections (b) and (f), violates the due process and due course of law provisions of the federal and state constitutions because it places the burden of proof on the property owner. *See Rumfolo v. State*, 535 S.W.2d 16, 21 (Tex.Civ. App.—Houston [14th Dist.]), *rev'd*, 545 S.W.2d 752 (Tex.1976). The Supreme Court rejected this holding. The Court began by noting that due process requires only that the State provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rumfolo*, 545 S.W.2d at 754 (quoting *Robinson v. Hanrahan*, 409 U.S. 38, 40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972)); *accord City of West Covina v. Perkins*, 525 U.S. 234, 240, 119 S.Ct. 678, 681, 142 L.Ed.2d 636 (1999) (due process in forfeiture proceeding requires notice and opportunity to be heard); *see also LaChance v. Erickson*, 522 U.S. 262, 266, 118 S.Ct. 753,

likewise provides for the "summary forfeiture" of simulated controlled substances, volatile chemicals, abusable glues, aerosol paints, and inhalant paraphernalia in the same manner. *Id.* §§ 482.004, 484.007, 485.038 (Vernon 1992). DPS has promulgated regulations governing such summary forfeitures. *See* 37 Tex.Admin.Code §§ 13.161–13.174 (2000) (Tex.Dep't of Pub. Safety, Summary Forfeiture and Destruction of Controlled Substances Property, Plants, and Other Miscellaneous Items); *see also* Tex.Health & Safety Code Ann. § 481.154(a) (Vernon 1992) (authorizing DPS to promulgate such regulations). These regulations are silent on any burden of proof required of the State to obtain a summary forfeiture. *See* 37 Tex.Admin.Code § 13.162.

The Transportation Code authorizes the forfeiture of a motor vehicle used in the commission of a felony DWI, intoxication manslaughter, or a similar offense. *See* Tex.Transp.Code

Ann. § 704.001(a) (Vernon 1999). After conviction, the sentencing court may forfeit the vehicle "after notice and hearing." *Id.* § 704.003 (Vernon 1999). The statute is silent regarding the burden of proof in such a forfeiture hearing. *Id.*

5. Three intermediate appellate courts have at least implicitly placed the burden on the State in article 18.18(f) hearings. *See State v. One Super Cherry Master Video 8–Liner Machine*, 2001 WL 657493 at *2, No. 03–99–751–CV, 2001 Tex.App. LEXIS 3891, at *4 (Tex.App.—Austin June 14, 2001, no pet. h.) ("the State was required to show"); *Janjua v. State*, 991 S.W.2d 419, 425 (Tex.App.—Houston [14th Dist.] 1999, no pet.) ("the State must show"); *Brown v. Barlow*, 685 S.W.2d 406, 408 n. 2 (Tex.App.—San Antonio 1985, orig. proceeding) ("the State, by failing to offer evidence, did not meet its initial burden of proof").

756, 139 L.Ed.2d 695 (1998) ("core of due process is the right to notice and a meaningful opportunity to be heard"); *University of Tex. Med. School v. Than*, 901 S.W.2d 926, 930 (Tex.1995) (due course of law "at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner").

The perception that *Rumfolo* places the burden of proof on the State comes from the following statement in that opinion:

> We construe Art. 18.18 to require the State to assume the burden to prove the proceeds were used in the gambling activity and to trace the money to the named respondents. As applied to this action, the statute clearly satisfies the constitutional requirement of procedural due process. Here the trial court conducted an evidentiary hearing after notice in writing to the respondents. After the State offered testimony concerning the gambling by the named respondents and the results of the search following the raid, the respondents had an opportunity to present evidence. The record shows the respondents or their attorney were present but offered no evidence at the hearing. To require claimants to show the property or proceeds is not gambling equipment or gambling proceeds as the case may be, is compatible with the due process requirement that claimants receive notice and be afforded an opportunity to present their objections to such forfeiture. In this case the State has satisfied due process through

its notice and the hearing afforded the parties.

*Rumfolo*, 545 S.W.2d at 754 (citation omitted).

■ We view *Rumfolo* as requiring the State to make a prima facie showing that the property in question is contraband subject to forfeiture. *See Brown*, 685 S.W.2d at 408 n. 2 ("the State, by failing to offer evidence, did not meet its *initial* burden of proof"). This is quite similar to the burden applicable to forfeiture proceedings under title 19, section 1615 of the United States Code.[6] *See* 19 U.S.C.A. § 1615 (West 1999). Under this federal statute, the government bears an initial burden of showing that the seized contraband is subject to forfeiture. *Id.; United States v. $129,727.00*, 129 F.3d 486, 492 (9th Cir.1997); *United States v. Land, Prop. Currently Recorded in the Name of Neff*, 960 F.2d 561, 563 (5th Cir.1992) (hereinafter, *"Neff"*). Once the government makes this initial showing, the burden shifts to the claimant to prove by a preponderance of evidence that the property is not subject to forfeiture. *Id.; accord Ursery*, 518 U.S. at 289, 116 S.Ct. at 2147–48.

■ Following this parallel federal concept, we hold that the State bears an initial burden in an article 18.18 forfeiture hearing to show that the seized property is contraband subject to forfeiture. *See Rumfolo*, 545 S.W.2d at 754; *Brown*, 685 S.W.2d at 408 n. 2. Applying the plain meaning of the words set forth in article

---

**6.** 19 U.S.C.A. § 1615 provides in pertinent part:

> In all suits or actions (other than those arising under section 1592 of this title) brought for the forfeiture of any vessel, vehicle, aircraft, merchandise, or baggage seized under the provisions of any law relating to the collection of duties on imports or tonnage, where the property is claimed by any person, the burden of proof shall lie

upon such claimant; and in all suits or actions brought for the recovery of the value of any vessel, vehicle, aircraft, merchandise, or baggage, because of violation of any such law, the burden of proof shall be upon the defendant: *Provided*, That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court....

19 U.S.C.A. § 1615 (West 1999).

18.18(f), we further hold that, once the State has made this initial showing, the burden shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture and that "he is entitled to possession" of it.[7] *See* TEX.CODE CRIM.PROC.ANN. art. 18.18(f); *Ursery*, 518 U.S. at 289, 116 S.Ct. at 2147–48; *$129,727.00*, 129 F.3d at 492; *Neff*, 960 F.2d at 563; *Rumfolo*, 545 S.W.2d at 754; *see also Tune v. Texas Dep't of Pub. Safety*, 23 S.W.3d 358, 363 (Tex.2000) (courts "must enforce the plain meaning of an unambiguous statute"). Accordingly, the ultimate burden of proof in an article 18.18 forfeiture hearing lies with the claimant. *See United States v. $506,231*, 125 F.3d 442, 451 (7th Cir.1997).

In the present case, the Hardys rely almost exclusively on the statutory exclusion provided by section 47.01(4)(B) of the Penal Code. *See* TEX.PEN.CODE ANN. § 47.01(4)(B) (Vernon Supp.2001). Because they bear the burden of proving by a preponderance of evidence that the seized machines are not subject to forfeiture, we conclude that they bear the burden of proving that the seized machines come within the statutory exclusion on which they rely.

## STANDARDS OF REVIEW

Because the Hardys bore the ultimate burden of proof in the forfeiture proceeding, their challenge to the legal sufficiency of the evidence in actuality constitutes an assertion that they established "as a matter of law" that the statutory exclusion applies to the seized machines. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *Crow*, 951 S.W.2d at 897.

Under *Sterner*, we first search the record for evidence that supports the court's refusal to find that the statutory exclusion applies, disregarding all contrary evidence. *See Sterner*, 767 S.W.2d at 690; *Waldrep v. Texas Employers Ins. Ass'n*, 21 S.W.3d 692, 697 (Tex.App.—Austin 2000, pet. denied). If we find some probative evidence to support the refusal to so find, then the inquiry ends. *See Sterner*, 767 S.W.2d at 691; *Waldrep*, 21 S.W.3d at 702 n. 14; *Markowski v. City of Marlin*, 940 S.W.2d 720, 725 (Tex.App.—Waco 1997, writ denied). If not, we then search the entire record to determine whether the Hardys established the application of the statutory exclusion as a matter of law. *See Sterner*, 767 S.W.2d at 690; *Waldrep*, 21 S.W.3d at 697; *Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 725 (Tex.App.—Waco 1998, pet. denied).

■ We likewise construe the Hardys' factual sufficiency challenge as an assertion that the court's refusal to find that the statutory exclusion applies is contrary to the great weight and preponderance of the evidence. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983); *Crow*, 951 S.W.2d at 897. Such a challenge requires us to consider and weigh all the evidence, not just the evidence which supports the court's refusal to so find. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996); *Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241, 258 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). We must sustain the court's refusal to find, unless it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

---

**7.** This conclusion finds further support in the following sentence from *Rumfolo:* "To require claimants to show the property or proceeds is not gambling equipment or gambling proceeds as the case may be, is compatible with the due process requirement that claimants receive notice and be afforded an opportunity to present their objections to such forfeiture." *State v. Rumfolo*, 545 S.W.2d 752, 754 (Tex.1976).

The Hardys also challenge the legal and factual sufficiency of the evidence to support one of the court's conclusions of law. However, a court's legal conclusions cannot be challenged for factual sufficiency. *See Mangum v. State*, 986 S.W.2d 788, 793 (Tex.App.—Amarillo 1999, pet. denied) (per curiam); *Clary v. Schmolke*, 977 S.W.2d 883, 885 n. 1 (Tex. App.—Beaumont 1998, pet. denied). Instead, we review the court's conclusions of law *de novo. City of Houston v. Kolb*, 982 S.W.2d 949, 952 (Tex.App.—Houston [14th Dist.] 1999, pet. denied); *Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 503 (Tex.App.—Waco 1997, pet. denied). We set aside these conclusions only when they are erroneous as a matter of law. *Id.*

With these standards in mind, we examine the issues presented.

## GAMBLING DEVICES

The Hardys contend in their second and fourth issues respectively that they established as a matter of law that the seized machines are not gambling devices or gambling paraphernalia and fit within the statutory exclusion provided by section 47.01(4)(B). They similarly argue in their sixth issue that Conclusion of Law "a"— that the seized machines constitute gambling devices and gambling paraphernalia—is erroneous as a matter of law.

The Hardys' first issue claims that the court's finding that the seized devices are gambling devices and gambling paraphernalia is contrary to the great weight and preponderance of the evidence. They aver in their third issue that the court's refusal to find that the statutory exclusion applies to the seized machines is contrary to the great weight and preponderance of the

evidence. Their fifth issue avers that Conclusion of Law "a" is not supported by factually sufficient evidence.[8]

Central to all of the Hardys' issues is their belief that they operated the seized machines in such a manner that they would come within the statutory exclusion provided by section 47.01(4)(B). That provision reads in pertinent part as follows:

(4) "Gambling device" means any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain *anything of value*, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance. The term:

. . . .·

(B) does not include any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

Tex.Pen.Code Ann. § 47.01(4)(B).

The parties do not dispute the manner in which the Hardys operated the seized machines. In sum, the devices dispensed tickets in a number corresponding to the points accumulated which could be ex-

**8.** Because an appellant cannot challenge conclusions of law in this manner, the Hardys' fifth issue is without merit. *See Mangum v. State*, 986 S.W.2d 788, 793 (Tex.App.—Amar-

illo 1999, pet. denied) (per curiam); *Clary v. Schmolke*, 977 S.W.2d 883, 885 n. 1 (Tex. App.—Beaumont 1998, pet. denied).

changed for gift certificates or for money to play on another machine.[9]

A machine falls within the exclusion provided by section 47.01(4)(B) only if it "rewards the player exclusively with *noncash* merchandise, prizes, toys, or novelties, or a representation of value redeemable for those items." *Id.* (emphasis added). The undisputed testimony establishes that the seized machines did not award prizes, toys or novelties. The pivotal question is whether the tickets dispensed constituted "representation[s] of value redeemable for [noncash merchandise prizes, toys, or novelties]." *Id.*

According to Webster's, the term "cash" means "money or its equivalent." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 177 (10th ed. 1993); *see also Albertson's, Inc. v. Sinclair,* 984 S.W.2d 958, 960 (Tex.1999) (employing dictionary definition to construe statute). "Noncash," then, is something other than "money or its equivalent." A player could exchange the tickets dispensed by the seized machines for gift certificates (an equivalent of money) or for money to play on another machine. Accordingly, we conclude that the seized machines rewarded players with tickets redeemable for "cash." *But see State v. One Super Cherry Master Video 8–Liner Machine,* —— S.W.3d ——, ——–——, No. 03–99–751–CV, 2001 WL 657493, at **4–5, 2001 Tex.App.LEXIS 3891, at *13–16 (Tex. App.—Austin June 14, 2001, no pet. h.) (State failed to prove as a matter of law that tickets dispensed by machines operated in a similar manner were not exchangeable for "noncash merchandise").

The Hardys also contend that the seized machines fall within the statutory exclusion because the value of the tickets which could be dispensed after a single play was "not more than 10 times the amount charged to play the game or device once or $5, whichever is less." *See* TEX.PEN.CODE ANN. § 47.01(4)(B). However, a reading of the statute reflects that this limitation refers only to the value of the "noncash merchandise, prizes, toys, or novelties" which a player could win by playing a particular machine. *Id.* Because the undisputed evidence establishes that the seized machines rewarded players with tickets redeemable for "cash," the fact that the Hardys limited the amount of cash a player could win from a single play is irrelevant.

## CONCLUSION

The undisputed evidence establishes that the eight-liners and slot machines seized from Game Time do not fit within the statutory exclusion provided by section 47.01(4)(B). Thus, the Hardys failed to establish as a matter of law that the statutory exclusion applies. The court's refusal to find that the statutory exclusion applies is not contrary to the great weight and preponderance of the evidence. Conclusion of Law "a" that the seized machines constitute gambling devices is not erroneous as a matter of law. In view of these holdings, we need not address that portion of the Hardys' issues which challenges the court's alternative findings and conclusions that the seized devices constitute gambling paraphernalia.

For these reasons, we conclude that the Hardys' first, second, third, fourth, and sixth issues are without merit.

We affirm the judgment.

Justice GRAY concurred.

GRAY, Justice, concurring.

The majority reads Article 18.18 and *Rumfolo* too narrowly. While it does not affect the outcome of this case, I disagree

---

9. In our view, it is irrelevant that Game Time put the money in the machine for a player who exchanged his ticket(s) to play on another machine.

with the burden the majority has placed on the State to forfeit contraband in a forfeiture hearing under Article 18.18(f). Their analysis is based upon a statement that is dicta in *Rumfolo.*

In *Rumfolo,* the Texas Supreme Court was faced with a due process challenge to forfeiture of money seized in a raid on a dice game. *See State v. Rumfolo,* 545 S.W.2d 752 (Tex.1976). As in this case there had been no conviction of the individuals participating in the dice game for any criminal offense. The State was proceeding with forfeiture under Article 18.18(b) of the Texas Code of Criminal Procedure. Article 18.18(b) requires that "the Magistrate to whom the return was made shall notify in writing the person found in possession of the alleged [contraband] ... to show cause why the property seized should not be destroyed or the proceeds forfeited." TEX.CODE CRIM.PROC.ANN. art. 18.18(b) (Vernon Supp.2001).

The particular issue was whether Article 18.18(f) violated due process. The subsection provides that unless the person appearing to contest the forfeiture " ... proves by a preponderance of the evidence that the property or proceeds is not gambling ... [property or proceeds], the magistrate shall dispose of the property or proceeds...." *Id.* at (f).

The lower court held that the forfeiture proceeding was quasi-criminal and that placement of the burden of proof on the person resisting forfeiture was unconstitutional. *Rumfolo v. State,* 535 S.W.2d 16, 20 (Tex.Civ.App.—Houston [14th Dist.] 1976, *rev'd*). Thus, the issue on appeal was whether the due process clause was violated by forfeiture in an Article 18.18(f) hearing. The Texas Supreme Court held:

> To require claimants to show the property or proceeds is not gambling equipment or gambling proceeds as the case may be, is compatible with the due process requirement that claimants re-

ceive notice and be afforded an opportunity to present their objections to such forfeiture. In this case the State has satisfied due process through its notice and the hearing afforded the parties.

*Rumfolo,* 545 S.W.2d at 754.

In discussion, the Texas Supreme Court does make the statement which has caused so much confusion over the proper placement of the burden of proof in forfeiture proceedings under Article 18.18(b). The Court's statement is: "We construe Art. 18.18 to require the State to assume the burden to prove the proceeds were used in the gambling activity and to trace the money to the named respondents." *Id.* I do not believe this was the basis of their holding. The Court's holding in *Rumfolo* is that the notice and opportunity to be heard satisfies the due process requirement for forfeiture proceedings under Article 18.18(b). The burden of proof in the Article 18.18(f) forfeiture hearing is so clearly placed upon the person resisting forfeiture that it cannot be said that the issue being decided was upon whom the burden of proof was placed by the statute.

One method to analyze the placement of the burden of proof is to analyze what would happen if neither side did anything at the hearing. There can be no question that if no one offers any evidence at the hearing, forfeiture of the property would be the result. Hardy has not contested the constitutionality of the procedure. Hardy has simply argued that *Rumfolo* places the burden of proof on the State. He is wrong.

The State has already presented what could be characterized as a prima facie case by establishing probable cause for the issuance of the warrant. TEX.CODE CRIM. PROC.ANN. art. 18.01(b) (Vernon Supp. 2001). Sworn affidavits supporting the warrant issued by the magistrate had to be filed before the warrant was issued. *Id.* We are not presented with the issue of

whether the State may forfeit property under Article 18.18(b) if the warrant under which the property was seized has been shown to be improperly issued.

The majority's discussion of a requirement for the State to present a prima facie case at the time of the Article 18.18(f) forfeiture hearing, but which places the ultimate burden of proof on the person resisting forfeiture, is not supported by the statute. I would also argue that it is not supported by the holding in *Rumfolo*. The majority reaches the same result that I would by placing the burden at the forfeiture hearing entirely on Hardy. Accordingly, I concur in the judgment of the court.